Cite as 2025 Ark. App. 50

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-24-160

| | | |
|---|---|---|
| | | **Opinion Delivered** January 29, 2025 |
| MARCELLO DAMON | APPELLANT | APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT [NO. 02CR-23-34] |
| V. | | |
| | | HONORABLE ROBERT B. GIBSON III, JUDGE |
| STATE OF ARKANSAS | APPELLEE | AFFIRMED; REMANDED TO CORRECT THE SENTENCING ORDER |

**KENNETH S. HIXSON, Judge**

Appellant Marcello Damon was convicted by a jury of possession of more than ten but less than two hundred grams of methamphetamine with intent to deliver and was sentenced to thirty years in prison. Damon's conviction was based on evidence presented by the State that Damon's SUV was stopped for crossing the center line and was subsequently searched, whereupon police officers discovered a large quantity of methamphetamine.

Damon now appeals, raising two arguments for reversal. First, Damon argues that there was insufficient evidence to support the verdict. Next, Damon contends that the trial court erred in disallowing his cross-examination of the arresting police officers on constitutional issues related to the stop and search of Damon's vehicle for the purpose of impeaching the officers. We affirm.

On April 12, 2023, the trial court entered a scheduling order setting the omnibus hearing for May 30, which stated in bold type that any pretrial motion, request, or issue not raised at the omnibus hearing would be deemed waived pursuant to Ark. R. Crim. P. 20.3.[1] The omnibus hearing was held as scheduled on May 30, and Damon appeared at the hearing represented by counsel. Despite being afforded the opportunity to make any motions at the omnibus hearing, Damon did not make a motion to suppress or any other motion at that time. Nor did Damon raise any suppression issue at subsequent pretrial hearings. On October 24, which was a week prior to the scheduled jury trial, Damon filed a motion to suppress the incriminating evidence, alleging that the search of his vehicle was pretextual and that the police officers lacked probable cause to search it. On October 27, the trial court entered an order denying Damon's motion to suppress as untimely. In the trial court's order, the trial court noted that in its previous scheduling order entered months earlier, it had ruled that any issue not raised at the omnibus hearing would be deemed waived and that, despite sufficient opportunity, Damon had failed to raise the suppression issue in a timely manner. We note that Damon makes no argument on appeal challenging the trial court's denial of his motion to suppress.

At the beginning of the jury trial held on October 31, 2023, the State asked that Damon's counsel be prohibited from making any statements or cross-examining the State's witnesses as to any alleged violation of Damon's constitutional rights with respect to the

---

[1]Rule 20.3(c) provides in relevant part that any pretrial motion that is not raised at the omnibus hearing shall be deemed waived.

search and seizure. Damon's counsel objected, stating that his motion to suppress was denied as untimely rather than on the merits, that he believed his constitutional right were an essential part of the case, and that "if there is wrongdoing by the government, the jury should hear about it and make a ruling on it." The trial court stated that it had already ruled on Damon's motion to suppress and had denied the motion to suppress. The trial court stated that it was the jury's role to determine guilt or innocence upon hearing the facts and applying the law and ruled that it would not allow cross-examination concerning alleged constitutional violations because the court had already ruled on it, it was not relevant to the jury trial, and it would likely confuse the jury.

The jury trial proceeded, and Officer Tad Huntsman with the Ashley County Sheriff's Department testified for the State. Officer Huntsman testified that he was patrolling in Crossett on the afternoon of February 14, 2023, when he saw a vehicle with a Louisiana license plate pull into a gas station and briefly stop before pulling back out onto the road. Officer Huntsman saw the vehicle cross the center line multiple times before the vehicle pulled into another gas station. Officer Huntsman pulled in behind the vehicle and initiated his blue lights for a traffic stop. Officer Huntsman called dispatch to inform other officers of the stop, and Officers Vorhease and Ferguson arrived shortly thereafter.

Damon, who was driving the SUV and was the only occupant, had already gotten out of the vehicle and left the driver's-side door open when he was approached by officers. Officer Huntsman stated that as he approached, he immediately smelled the odor of

marijuana coming from inside the vehicle. Officer Huntsman advised Damon that the smell of marijuana constituted probable cause to search, and he conducted a search of the vehicle.

Officer Huntsman went to the center console area, and when he had difficulty opening the console, Damon opened it for him. Inside the console was a baggy containing five pills that Officer Huntsman suspected to be ecstasy.[2] Officer Huntsman also saw a plastic cup with a plastic lid in a cupholder in the vehicle's center console area. Officer Huntsman stated that he picked the cup up but did not open it. He stated, "I picked it up and there was obviously some sort of liquid or drink or something in there, and at that moment or about that time, one of the officers said hey or got my attention—distracted me or something—[and] I put the cup back down and never went back to it" during the traffic stop. Damon was arrested based on the discovery of suspected ecstasy pills, and his vehicle was towed to Steve's Body and Frame, where it remained locked on the premises.

Officer Huntsman obtained a warrant to conduct a second, more thorough search of the vehicle. He went to Steve's Body and Frame and found the vehicle in the same spot where it had been towed. Officer Huntsman testified that he opened the lid of the plastic cup in the cupholder in the center console area, which was in the same place that he had left it. Inside the cup, Officer Huntsman discovered two baggies containing suspected methamphetamine. Photographs were admitted that showed that these baggies were not visible while the lid was on the cup but that with the lid off, they could be seen in the cup

---

[2]One of the five pills was later tested at the Arkansas State Crime Laboratory and was positive for methamphetamine.

along with a red liquid. The two baggies were tested at the crime lab where it was confirmed that one baggie contained 55.4 grams of methamphetamine and the other contained 27.6 grams of methamphetamine, for a total of 83 grams of methamphetamine. Officer Huntsman testified that a typical methamphetamine user would use a quarter or half a gram. He stated that an average user would not have 83 grams of methamphetamine, and that this amount would easily supply over one hundred users.

On cross-examination, Officer Huntsman testified that prior to the stop of Damon's vehicle, he knew who Damon was based on information from confidential informants that Damon had been bringing large quantities of drugs into the county. Officer Huntsman, however, reiterated that the reason he pulled Damon over was for crossing the center line, and the reason he searched the vehicle was because he smelled marijuana coming from the vehicle during the stop. Officer Huntsman stated that he did not cite Damon for possession of marijuana, and when asked if any marijuana was found in the vehicle, he stated that he saw what he believed to be "marijuana shake," or small amounts of marijuana, on the floorboard. He stated, "I never said I was sure I found marijuana—I said I was sure I smelled marijuana." Officer Huntsman acknowledged that he did not find rolling papers or a pipe and that no marijuana was found on Damon's person. Damon's counsel then asked Officer Huntsman if he found anything that supported his assertion that he smelled marijuana, and Officer Huntsman replied yes. The State then objected on the ground that the issue was not relevant. Damon's counsel disagreed, arguing that it was relevant because the officers used the smell of marijuana as a pretext for searching the vehicle. Damon's counsel inquired,

5

"How am I supposed to defend my client's rights when they've been allegedly violated if I can't ask questions that indicate whether they've been violated or not?" The trial court sustained the State's objection, stating that this was a suppression issue that was previously ruled on and denied by the trial court. The trial court ruled that questions about whether Damon's constitutional rights were violated during the stop served only to confuse the jury and that "it is not a matter for any jury."

Officer Michael Vorhease, who participated in the investigation, also testified for the State. Officer Vorhease stated that when he assisted with Officer Huntsman's stop of Damon's vehicle at the gas station, he smelled a strong odor of marijuana immediately upon walking up to the vehicle. During the initial search of Damon's vehicle, Officer Vorhease saw Officer Huntsman remove the baggie of what appeared to contain ecstasy pills from the console. Officer Vorhease also saw the plastic cup with a plastic lid in the cupholder near the vehicle's gear shift. Officer Vorhease stated that the cup had a frosted white (as opposed to a clear) lid and that he did not pick up the cup or remove the lid. He stated that it appeared to be a fountain drink from a gas station and that he could see what looked like a red liquid through the lid. Officer Vorhease stated that the first time the lid was removed from the cup was during the second search of the vehicle at Steve's Body and Frame and that he was present for that search. He stated that when Officer Huntsman removed the lid, there was "Kool-Aid or fruit punch" in the cup in addition to two baggies containing suspected methamphetamine.

6

On cross-examination, Officer Vorhease stated that "marijuana shake" was seen on the floorboard of the vehicle during the initial search but it was not enough to charge Damon with, particularly when suspected felony narcotics were found. He stated further that no marijuana paraphernalia was found during the search. Defense counsel asked, "So it is safe to say you were on a search to be able to arrest Mr. Damon, huh?" Officer Vorhease replied, "No, ma'am, that's not correct." On redirect examination, Officer Vorhease testified that the current forms of marijuana can produce a very strong odor that can last for days in a vehicle, and the fact that marijuana is not found does not mean a vehicle did not contain it at some point.

Damon's first argument on appeal is that there was insufficient evidence to support his conviction for possession of methamphetamine with intent to deliver. In reviewing a sufficiency argument, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. We will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.*

Pursuant to Ark. Code Ann. § 5-64-420(a) (Supp. 2023), it is unlawful for a person to possess methamphetamine with the purpose to deliver the methamphetamine. Damon's sufficiency challenge is twofold. First, he argues that there was insufficient evidence that he

7

possessed the contraband found in the vehicle. Next, Damon argues that, even if possession was proved, there was insufficient evidence that he had the purpose to deliver the drugs.

Arkansas Code Annotated section 5-1-102(15) (Supp. 2023) provides that "possess" means "to exercise actual dominion, control, or management over a tangible object." Under this definition, Damon argues that there was insufficient evidence that he possessed the controlled substances found in the baggie inside the closed console or the controlled substances found in the two baggies inside the plastic cup. Damon acknowledges that proof of actual possession is not necessary and that possession of contraband can be proved by constructive possession, which is the control or right to control the contraband. *See Pokatilov v. State*, 2017 Ark. 264, 526 S.W.3d 849. In such cases, the State must prove that the accused exercised care, control, or management over the contraband and that the accused knew the matter possessed was contraband, considering numerous factors including the proximity of the contraband to the accused, the fact that it is in plain view, and ownership of the property where the contraband was found. *Carter v. State*, 2010 Ark. 293, 367 S.W.3d 544. Damon notes that none of the controlled substances were in plain view nor were any of the illegal substances found on his person. He further states that although he was driving the vehicle, there was no proof that he owned it, and there was no testimony that he appeared nervous or acted suspiciously during the traffic stop. Thus, Damon contends that the State's proof of his constructive possession of the methamphetamine was lacking.

Damon next argues that, even if possession of the methamphetamine was proved, there was insufficient evidence that he intended to deliver the drugs. He asserts that there

8

was no evidence that had the means to weigh or separately package the drugs, nor did the police find any documentation or notes indicative of drug sales. Nor did he possess a firearm or large amounts of cash. Damon argues that at most, under these circumstances, a jury verdict of simple possession may have been supported by the evidence, but the evidence did not support the jury's finding of his purpose to deliver.

We conclude that neither of Damon's sufficiency arguments is preserved for review. Arkansas Rule of Criminal Procedure 33.1(a) requires a criminal defendant in a jury trial to move for a directed verdict at the close of the State's case and at the close of all the evidence. The rule is strictly construed, and to preserve a challenge to the sufficiency of the evidence, an appellant must make a specific motion for a directed verdict that informs the trial court of the exact element of the crime that the State has failed to prove. *Mendoza v. State*, 2024 Ark. App. 322, 689 S.W.3d 475. Our appellate courts have been steadfast in holding that we will not address the merits of an appellant's insufficiency argument when the directed-verdict motion is not specific. *Daniels v. State*, 2018 Ark. App. 334, 551 S.W.3d 428. Further, a party cannot enlarge or change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. *Id.*

At the close of the State's case, Damon made a directed-verdict motion arguing that "the State has not met their burden of proof" and that "there is no proof that the methamphetamine existed at the time of the original search and that it was unlawful." After the defense rested its case, Damon renewed his prior directed-verdict motion and added that "the testimony between the officers is inconsistent." On appeal, Damon changes his

9

argument and argues that there was insufficient proof that he was in actual or constructive possession of any of the methamphetamine found in the vehicle he was driving and that, even assuming his possession of the drugs was proved, there was insufficient proof that he intended to deliver the drugs. Because Damon did not raise these specific arguments during his directed-verdict motions below, these arguments are not preserved for review.

Damon's remaining argument is that the trial court erred in disallowing his cross-examination of the arresting police officers on constitutional issues related to the stop and search of Damon's vehicle for the purpose of impeachment of the officers. Damon claims that Investigator Huntsman stopped him because he was under investigation for narcotics and that the stop of his vehicle was therefore pretextual. Damon further notes that both officers who testified for the State testified that the search of Damon's vehicle was premised on an alleged odor of marijuana coming from the vehicle but that neither officer found any paraphernalia for smoking marijuana, nor did they find any marijuana on Damon's person or charge him with possession of marijuana. Damon contends that, although he was unable to pursue a constitutional challenge because his motion to suppress was untimely, he should have been allowed to pursue a line of questioning that would have attacked the bases for the stop and searches of the vehicle, which would have been relevant for determining the officers' credibility. Damon argues that because credibility of witnesses is crucial, he should have been allowed to fully cross-examine the officers on these issues.

The trial court has wide discretion in making evidentiary rulings, and we will not reverse a ruling on the admissibility of evidence absent an abuse of discretion. *Jackson v.*

*State*, 375 Ark. 321, 290 S.W.3d 574 (2009). An abuse of discretion is a high threshold that does not simply require error in the trial court's decision but requires that the trial court act improvidently, thoughtlessly, or without due consideration. *Collins v. State*, 2019 Ark. 110, 571 S.W.3d 469. We will not reverse such a ruling absent an abuse of that discretion, nor will we reverse absent a showing of prejudice because prejudice is not presumed. *Hoyle v. State*, 2018 Ark. App. 498, 562 S.W.3d 253.

We hold that the trial court did not abuse its discretion in limiting Damon's cross-examination of the officers with respect to potential constitutional issues surrounding the stop and seizure of Damon's vehicle. Arkansas Rule of Evidence 402 provides that all relevant evidence is admissible, and Rule 403 provides that the trial court can exclude relevant evidence if its probative value is substantially outweighed by the danger of confusion of the issues or misleading the jury. Here, in making its ruling, the trial court stated that the constitutionality of the stop and seizure was relevant to Damon's pretrial motion to suppress that was denied by the trial court but was not relevant to the jury's determination of Damon's guilt or innocence on the charge of possession of more than ten but less than two hundred grams of methamphetamine with intent to deliver and would likely confuse the issues. This case is similar to *Kellensworth v. State*, 2021 Ark. 5, 614 S.W.3d 894, where the supreme court held there was no abuse of discretion in the trial court's exclusion of Kellensworth's attempt to cross-examine officers about a wrong address on a search warrant where the trial court had denied Kellensworth's pretrial motion to suppress and found that this evidence would only be misleading to the jury.

Moreover, Damon suffered little prejudice as a result of the trial court's ruling because during his cross-examination of the officers, Damon established that the officers suspected Damon of drug dealing before conducting the stop and seizure, and he also established that although the search was allegedly based on the smell of marijuana, the only evidence of marijuana discovered during the search was "marijuana shake" on the floorboard. Thus, Damon did cross-examine the officers at length in an attempt to impugn their credibility. To the extent Damon wished to cross-examine the officers further on these issues, he failed to proffer any testimony from the officers to support his allegation that the stop and search were pretextual. Absent a proffer of the excluded evidence, we have no way of knowing whether appellant sustained prejudice, and the failure to proffer evidence so that this court can make a determination on prejudice precludes our review of the issue on appeal. *McEwing v. State*, 366 Ark. 456, 237 S.W.3d 43 (2006). And finally, we observe that Damon argued below that his cross-examination of the officers should have been allowed for the jury to determine whether his constitutional rights were violated, and he now changes his argument and argues for the first time on appeal that the cross-examination should have been admitted as impeachment. An appellant is precluded from raising arguments on appeal that were not first brought to the attention of the trial court and is bound by the scope and nature of arguments made at trial. *Sauerwin v. State*, 363 Ark. 324, 214 S.W.3d 266 (2005). For these reasons, we find no reversible error on this point.

We affirm Damon's conviction for the reasons stated herein. However, we remand to the trial court with directions to correct a clerical error in the sentencing order. The order

indicates that Damon was found guilty by the trial court and was sentenced by the trial court, but he was found guilty and sentenced by the jury. The trial court is free to correct a clerical error to have the judgment speak the truth. *Battles v. State*, 2024 Ark. App. 198. Thus, we affirm Damon's conviction, but we remand to the trial court with instructions to correct the sentencing order.

Affirmed; remanded to correct the sentencing order.

BARRETT and MURPHY, JJ., agree.

*Boyd & Buie*, by: *Rufus T. Buie III*; and *Christopher W. Hays, P.A.*, by: *Christopher W. Hays*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.