Cite as 2025 Ark. App. 225

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CR-24-431

| | |
|---|---|
| JAMES PAMPLIN, JR.<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered April 16, 2025<br><br>APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT<br>[NO. 02CR-23-176]<br><br>HONORABLE ROBERT B. GIBSON III, JUDGE<br><br>AFFIRMED; REMANDED TO CORRECT SENTENCING ORDER |

**ROBERT J. GLADWIN, Judge**

James Pamplin appeals his March 15, 2024 convictions by an Ashley County jury on one count of possession of methamphetamine, more than two grams but less than twenty grams, a Class C felony, in violation of Arkansas Code Annotated section 5-64-419(b)(1)(B) (Supp. 2023); and possession of drug paraphernalia, a Class D felony, in violation of Arkansas Code Annotated section 5-64-443(a)(2) (Supp. 2023), for which he was sentenced to a total of thirty years in the Arkansas Division of Correction and a fine of $10,000. Pamplin challenges the sufficiency of the evidence supporting the convictions and argues that the circuit court erred in allowing evidence both of his previous convictions and a pending criminal charge in the sentencing phase of the trial. We affirm; however, we remand to the circuit court to correct the error in the sentencing order.

I. *Facts and Procedural History*

On September 5, 2023, Pamplin—along with a passenger, Dalton Tharpe—was driving home from work and was stopped in his vehicle at about 2:18 p.m. by Hamburg Police Officer Nicole Carter for failing to signal a turn and driving without a license plate.

Officer Carter asked Pamplin to step out of the truck and noticed that he appeared nervous, which raised concerns that he may have weapons or contraband. During a search of his person, Pamplin pulled away when Officer Carter attempted to pat down his right pocket. In Pamplin's pocket, Officer Carter discovered a used syringe with a crystal substance inside it. Pamplin explained that he had the syringe because his job at a paving company required him to clear the road of debris. When he found the syringe on the road, he decided to hold onto it to dispose of it later instead of throwing it in the ditch, as was his usual practice. His stated reason for doing so was because the syringe was found next to a house with toys in the driveway, and he did not want children to find the needle.

Officer Brandon Kelley with the Hamburg Police Department arrived shortly after Officer Carter initiated the stop and conducted a search of Pamplin's truck. Inside a camouflage backpack on the center console was a round container with suspected marijuana and a baggie of a crystalline substance, suspected methamphetamine, in a blue Altoids tin. The Altoids tin and marijuana were in the same pocket of the backpack. Pamplin claimed ownership of the backpack and the marijuana, but he denied any knowledge of the crystalline substance.

During a subsequent interview, Pamplin told Arkansas State Police Investigator David Tumey and Officer Carter that the last time he had used methamphetamine was the Friday before he was arrested. When Officer Carter had asked him the same question at the time of his arrest, he answered that he had not used methamphetamine in the last six months.

Pamplin was arrested and taken to the Hamburg Police Department, and the passenger, Tharpe, was released. The seized items were sent to the Arkansas State Crime Laboratory for testing. The crystalline substance from the baggie was confirmed to be 4.8026 grams of methamphetamine.

On September 28, 2023, Pamplin was charged by criminal information with possession of methamphetamine, a Class D felony; possession of drug paraphernalia, a Class D felony; and possession of marijuana, a Class A misdemeanor. After receiving the crime-lab analysis, an amended criminal information was filed on February 28, 2024, changing the possession-of-methamphetamine charge to one of more than two grams but less than ten grams, a Class C felony, in violation of Arkansas Code Annotated section 5-64-419(b)(1)(B), and amending the sentencing range to up to thirty years due to Pamplin's criminal history.

At the beginning of the March 14 jury trial, the State announced that it was nolle prossing the possession-of-marijuana charge. The State presented four witnesses: (1) Investigator David Tumey, who assisted with the traffic stop; (2) Officer Carter, who initiated the traffic stop; (3) Arkansas State Police Officer Kelley, who assisted with the search of the truck; and (4) and Ann Aaron, the crime-lab forensic chemist. On rebuttal, Tharpe was called as a witness, and Officer Carter was recalled as a witness.

Investigator Tumey testified that on September 5, 2023, the Hamburg Police Department asked him to assist Officers Carter and Kelley with a traffic stop. The confiscated substances were given to Investigator Tumey for testing and submission to the crime lab. He identified seven exhibits related to those substances.

On direct examination, Investigator Tumey testified that when he interviewed Pamplin at the Hamburg Police Department, Pamplin stated that the last time he used methamphetamine was the Friday before the arrest.

On cross-examination, Investigator Tumey testified that the syringe was not tested for any substances at the crime lab. He agreed that syringes are used to inject other medications such as insulin, and he agreed that Pamplin denied that he was aware of any methamphetamine in the backpack.

Investigator Tumey was asked whether he requested a fingerprint analysis on the methamphetamine, and he responded that he did not because the crime lab would not have performed it due to cost efficiency. Investigator Tumey acknowledged that there was a question as to ownership of the methamphetamine because there were two people in the car, but he insisted that the crime lab would not have tested for fingerprints even if he had requested it. On recross, he admitted that there are times when possession is an issue that the officer can ask the crime lab for a fingerprint analysis if the officer thinks it is important to the case, and the crime lab will do it. He clarified, however, that he could count on one hand how many times that had occurred.

Investigator Tumey recalled that Pamplin had told him that his passenger, Tharpe, was going through his belongings when he previously stopped at a convenience store and that the reason he had the syringe was because he found it on the side of the road and put it in his pocket so that no one else would find it.

Officer Carter testified that she initiated the traffic stop on September 5, 2023, because Pamplin did not use a blinker, and the car had no tags. She confirmed that Pamplin was driving the vehicle, and Tharpe was the passenger. She testified that Pamplin was asked to step out of the vehicle because he was acting nervously. Officer Carter's body-cam footage was played for the jury. It showed Pamplin trying to pull his right pocket away and saying, "I swear to God. Oh, my God, I just picked it up off the road." He stated, "I didn't want anybody else to get on it." At this point, Officer Carter placed Pamplin under arrest for possession of drug paraphernalia. At the end of the body-cam footage, the jury saw a plastic baggie with a clear, crystalline substance, suspected of being methamphetamine, that was found inside the camouflage backpack. On the footage, Pamplin can be heard acknowledging that the backpack is his and admitting that the marijuana also found inside was his as well. Pamplin told Officer Carter that he last used methamphetamine six months ago.

On cross-examination, Officer Carter stated that Pamplin was arrested for drug paraphernalia because she could see the crystal-like substance inside the syringe but admitted that no drugs had been found at that point, and she was not qualified to determine what substance was in the syringe. Regarding passenger Tharpe, Officer Carter admitted that he was within arm's reach of the backpack where the crystal-like substance was found, and it

5

was possible that he was alone for at least thirty seconds when Pamplin was removed from the vehicle. Officer Carter said the backpack was found in the floorboard of the vehicle where the hump is in the middle. She also acknowledged that Pamplin denied having knowledge of the crystal substance in the bag.

Officer Kelley, who assisted Officer Carter, testified that Officer Carter found the syringe in Pamplin's cargo shorts and that in his experience, syringes are used to shoot up methamphetamine, heroin, or cocaine. Tharpe was also searched, but nothing was found. Officer Kelley's body-cam footage was also shown to the jury. Officer Kelley testified that marijuana was found in a pocket about halfway down on the right side of the backpack. He then found an Altoids can with a plastic baggie inside about halfway down below the marijuana in the same pocket. Officer Kelley said Pamplin admitted the bag was his without hesitation and stated that it had been six months since he used methamphetamine. Exhibit 8 included four body-cam videos from Officers Carter and Kelley.

On cross-examination, Officer Kelley acknowledged that syringes are also used for legal purposes and admitted that he did not check to see if Pamplin had any needle marks on his arms. Officer Kelley testified that he could see Tharpe's movements while he was in the vehicle but agreed that Tharpe was sitting in the vehicle unobserved before he approached the passenger side. He also noted that the pocket in the backpack where the methamphetamine was found was facing toward the passenger's side, and that Tharpe had been sitting right next to the bag.

Ann Aaron, a forensic chemist with the Arkansas State Crime Laboratory, testified regarding the evidence. Exhibit 10 was admitted as the box that had been submitted to the crime lab. Aaron testified that the green leafy substance (exhibit 6) and the syringe (exhibit 7) were not tested. The crystal substance (exhibit 5) was tested and found to be methamphetamine with a weight of 4.8026 grams. Aaron said the crime lab does not test everything for efficiency purposes, and the policy of the crime lab is to test only the substance that would result in the highest felony charge. Exhibit 9, the crime-lab report, was admitted. On cross-examination, Aaron agreed that no request for a fingerprint analysis had been submitted.

The State introduced as exhibit 11 the following statement Pamplin had made at the pretrial hearing: "I told him yesterday or last Thursday, I'm willing to take responsibility for my actions, you know. Did I have some drugs in my truck? Yes, I did. I have a problem and I . . . ." The State then rested. Pamplin moved for directed verdict, arguing that the State failed to make a prima facie case that he was in possession of methamphetamine. He argued that although the methamphetamine was found inside a backpack that he accepted ownership of, he denied ownership of the methamphetamine and denied knowing that it was in the backpack. Pamplin argued that there was another person in the vehicle, and it is possible that the methamphetamine was planted in the backpack. On the possession-of-drug-paraphernalia charge, Pamplin argued that because the crime lab did not analyze the substance in the syringe, the State had not made a prima facie case that the syringe was used for the purpose of injecting illegal drugs. The circuit court denied both the motions.

Tabitha Pamplin, Pamplin's wife, testified that she had been married to Pamplin since 2020. She noted that Pamplin worked at Riley's Paving and that he usually left the home at 4:15 a.m. Ms. Pamplin testified that she packed her husband's lunch in the backpack on September 5, 2023. Ms. Pamplin said she went through the backpack "pretty good," including the side pocket, and she did not see any illegal drugs in the bag and did not put any drugs in the bag. On cross-examination, she said the last time she knew that her husband had used methamphetamine was in 2018 and "absolutely not" the Friday before he was arrested.

Pamplin testified on his own behalf, and he acknowledged that he has had drug issues in the past and is a convicted felon. But he noted that since he met his wife, he has changed his whole life.

Pamplin testified that he had not used methamphetamine in the last six years. However, he admitted that when he had used it in the past, he used needles. He denied the officers' testimony that he told them he had used methamphetamine the previous Friday or six months ago, stating he told officers that he would not pass a drug test only because of his marijuana use. However, when confronted with the prospect of reviewing Officer Carter's body-cam footage, he did not deny telling Officer Carter that he had used methamphetamine six months ago.

Pamplin stated that on the day in question, he was working for Riley Pavement, paving the highway between Lake Village, Arkansas, and McGehee, Arkansas. He testified that part of his job was to pick stuff up off the road and, normally, throw it into the ditch.

Pamplin said that when he found the syringe on the side of the road, however, he put it in his pocket because he did not want to leave it in a ditch close to houses with toys in the driveway and because he was not close to a trash can or bag.

On that day, he got off early at about 1:30 p.m., picked up his backpack off the paver, and then left in his truck. He explained that the backpack had been sitting on the paver all day. Pamplin said he put the marijuana in his bag when he left his truck earlier that morning but claimed there were no other drugs in his backpack. Pamplin admitted the backpack was his but noted that it had been in the floorboard of the passenger's side of the truck until he saw Tharpe going through his things. Pamplin testified that at that time, he moved the backpack to the middle of the floor between them.

Pamplin testified that Tharpe had been riding with him when he left work that day because Tharpe was going to sell him a truck for scrap. Pamplin further testified that on the ride home, he and Tharpe had stopped at a gas station, and after paying for gas, he came outside and saw Tharpe "going through [his] truck" as if he were "looking for something or trying to hide something." He stated that he admonished Tharpe not to "try to hide nothing, plant nothing, or put nothing in my truck." When they drove through Hamburg, the two stopped at another gas station closer to their destination so that Pamplin could get a drink. Pamplin testified that he caught Tharpe going through his truck again, and he told Tharpe, "Man, you better not be hiding nothing and putting nothing in my truck." They were pulled over by Officer Carter shortly after the second stop. Pamplin testified that selling methamphetamine was "all [Tharpe] talked about."

Regarding the statement Pamplin made during the pretrial hearing that had been introduced as exhibit 11, Pamplin stated that he was referring to marijuana, not methamphetamine. Regarding the pretrial statement, Pamplin said he was asking for help, not for drug treatment but for his mental health. When asked about his statement to Investigator Tumey about using "dope" the Friday before the arrest, Pamplin said he was explaining that he could not pass a drug test because he had been smoking "weed."

On cross-examination, the State moved to enter certified copies of his 2005 convictions for possession of methamphetamine with intent to deliver, possession of cocaine with intent to deliver, simultaneous possession of drugs and firearms, and an unspecified "controlled substance violation." The State introduced a 2021 revocation from a 2005 drug conviction for possession of methamphetamine with intent to deliver, possession of cocaine with intent to deliver, and simultaneous possession of drugs and firearms, all Class Y felonies. The basis for the 2021 revocation of Pamplin's suspended sentences resulting from his 2005 convictions was Pamplin's commission of criminal mischief. Over Pamplin's objection to the introduction of the convictions because he had admitted that he was a convicted felon, the circuit court allowed the admission of the criminal record as exhibit 12, finding that Pamplin had opened the door by discussing his history.

After Pamplin testified, he renewed his motions for a directed verdict, which the circuit court again denied. The State then called Tharpe as a rebuttal witness. Tharpe testified that at the first gas station, he went inside to buy a drink and cigarettes, and he checked out after Pamplin. He denied sitting in Pamplin's truck the whole time and "pilfering around"

10

as Pamplin had testified. Tharpe also denied that they stopped at a second gas station or that he put methamphetamine in Pamplin's backpack. Tharpe testified that he was not even aware that Pamplin had a backpack with him. He denied that Pamplin ever told him not to hide anything in the truck, stating that the only topic the two of them had discussed was truck parts.

Officer Carter also was called as a rebuttal witness, and the State played the footage of the interview of Pamplin conducted by her and Investigator Tumey. She said that when Investigator Tumey interviewed Pamplin, Pamplin was asked when he had last used "dope," and Pamplin responded, "Last Friday." Officer Carter stated that "dope" is a common word for methamphetamine, and in the interview, Pamplin and the officers had used "dope" to refer only to methamphetamine, not marijuana.

After rebuttal, the State rested again, and Pamplin renewed his motions for directed verdict, which the circuit court again denied. The jury returned guilty verdicts for possession of methamphetamine and possession of drug paraphernalia.

During the sentencing phase of the trial, the State called Investigator Tumey. He testified that 4.8 grams of methamphetamine is a significant amount drugs and testified concerning methamphetamine use and how it affects Ashley County.

Pamplin also testified at the sentencing hearing. He testified that he had a lot of problems growing up and that he is taking responsibility for what he has done. Pamplin also testified that he "tried to throw [his] life away when [he] lost [his] son," and he had "been slowly trying to change [his] whole life" now that he is married.

On cross-examination, the State noted its intention to bring up a pending felony charge against Pamplin for terroristic threatening because he opened the door by testifying that "since all these bad things have happened to [him], [he has] really tried to do better." Defense counsel objected, noting that he did not know the evidence in that case and that he had not been convicted of that charge. The circuit court allowed the State to bring up the pending charge in cross-examination. The State said, "And in 2024, this very year, you have a pending felony count of terroristic threatening -" No objection was raised when the statement was made, although Pamplin's counsel did attempt to advise him that he was entitled to invoke his Fifth Amendment right against self-incrimination. The circuit court allowed the State to continue the question. The State continued by asking, "It's a pending charge for which you will have an opportunity to go to trial if you want, but it's a felony, isn't it?" Pamplin responded, "Yes."

Pamplin received an aggregate sentence of thirty years' imprisonment in the Arkansas Division of Correction and $10,000 in fines (specifically, twenty-seven years and a $5,000 fine for Count I and three years and a $5,000 fine for Count II, to run consecutively). The sentencing order was filed on March 15, and Pamplin filed a timely notice of appeal on April 8.

II. *Discussion*

A. Sufficiency of the Evidence

On appeal, this court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. *Gladden v. State*, 2025 Ark. App. 78, 706 S.W.3d 741. In

reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Id.* We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* The duty of resolving conflicting testimony and determining the credibility of witnesses is left to the discretion of the jury. *Id.* Circumstantial evidence may provide the basis for a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable explanation of the crime. *Block v. State*, 2015 Ark. App. 83, 455 S.W.3d 336.

### 1. *Possession of methamphetamine*

Pamplin challenges the sufficiency of the evidence supporting this conviction, arguing that the evidence presented by the State failed to exclude all other reasonable hypotheses about who may have possessed the methamphetamine found in his backpack. He submits that it is undisputed that when officers conducted the traffic stop on September 5, 2023, there were two people in the vehicle. Pamplin was driving the vehicle, and Tharpe was a passenger in the vehicle. It was Pamplin's contention that although the contraband was discovered inside his backpack, he did not put any drugs other than marijuana in the backpack; accordingly, the methamphetamine must have belonged to his passenger, Tharpe.

Pamplin acknowledges that the State is not required to prove literal physical possession of contraband to prove possession as an element of a crime, and a defendant's constructive possession will suffice. *See Baker v. State*, 2019 Ark. App. 515, 588 S.W.3d 844.

13

We look to whether the contraband was found in a place that was under the dominion and control of the accused. *See Block*, *supra*. The fact-finder must consider the totality of the circumstances when determining whether sufficient additional factors support the finding of constructive possession. *Harjo v. State*, 2017 Ark. App. 337, 522 S.W.3d 839. Two equally reasonable conclusions as to what occurred merely gives rise to a suspicion of guilt, which is not enough to support a conviction. *Fudge v. State*, 341 Ark. 759, 20 S.W.3d 315 (2000).

To prove constructive possession, the State must establish that the defendant exercised care, control, and management over the contraband, and the accused knew the matter possessed was contraband. *Baltimore v. State*, 2017 Ark. App. 622, 535 S.W.3d 286. Joint occupancy of a vehicle, standing alone, is not sufficient to establish possession or joint possession. *Id.* (citing *Mings v. State*, 318 Ark. 201, 884 S.W.2d 595 (1994)). Where only circumstantial evidence is presented, there must be sufficient additional incriminating factors to link the accused with the controlled substance, and it must exclude every other reasonable hypothesis consistent with innocence. *Ravellete v. State*, 264 Ark. 344, 571 S.W.2d 433 (1978).

Pamplin maintains that the State could only prove two factors in the analysis set out in *Mings*, *supra*, which lists the following factors to be considered in cases involving automobiles occupied by more than one person: (1) whether the contraband is in plain view; (2) whether the contraband is found with the accused's personal effects; (3) whether it is found on the same side of the car seat as the accused was sitting or in near proximity to it; (4) whether the accused is the owner of the automobile or exercises dominion or control

14

over it; and (5) whether the accused acted suspiciously before or during the arrest. He urges that the State could prove only that the vehicle belonged to him and that the drugs were found in his backpack.

He argues that the drugs were not in plain view, and they were in closer proximity to Tharpe than they were to him. He submits that the evidence was clear that Tharpe had ample opportunity to place contraband in Pamplin's bag and that he had motive because he did not want to be charged with a felony. In considering the totality of the circumstances in this case, Pamplin maintains that reasonable hypotheses are that Tharpe or someone else planted the drugs when the backpack was left on the paver all day. He urges that because the State failed to present evidence to exclude those hypotheses, his conviction must be reversed.

We disagree. Possession can be either actual possession or constructive possession— that is, knowledge and control over the contraband. *Terry v. State*, 2018 Ark. App. 435, at 4, 559 S.W.3d 301, 304. Constructive possession can be inferred when the contraband is in the joint control of the accused and another. *Thomas v. State*, 2024 Ark. App. 159, at 7, 686 S.W.3d 576, 580. When there is joint occupancy of a vehicle, proof of constructive possession requires evidence linking the accused to the contraband beyond mere occupancy of the vehicle. *Id.* Proof that a defendant is the driver of a vehicle is evidence of dominion and control over it. *Id.* at 7, 686 S.W.3d at 581.

Here, although Pamplin's truck was jointly occupied by Tharpe and him, we hold that the State presented substantial evidence linking Pamplin to the methamphetamine. He was pulled over for failing to signal a turn and driving without license plates. When Officer

15

Carter approached him, Pamplin seemed nervous, which aroused her suspicion that he may have been in possession of contraband. After finding a used syringe with a white crystal substance in his pants pocket, a search of Pamplin's truck revealed 4.8 grams of methamphetamine inside a backpack Pamplin did not deny was his. The methamphetamine was in the same pocket as marijuana, which he admitted belonged to him. Pamplin then gave multiple conflicting statements about the last time he had used methamphetamine, first stating he had not used methamphetamine in six months, then stating that he had used the prior Friday, and ultimately testifying that he had not used it in six years. The jury considered all this evidence and was free to exclude as unreasonable the alternate hypothesis that Tharpe had planted the methamphetamine in Pamplin's backpack.

In asking this court to focus on evidence that undermines the jury's conclusion that he constructively possessed the methamphetamine, Pamplin asks us to reweigh the evidence in his favor, which we will not do. *See Gladden*, *supra*. Instead, we consider only the evidence that supports the verdict and view the evidence in the light most favorable to the State. *Id.* Because the evidence supporting the verdict compels the conclusion that Pamplin had knowledge of and control over the methamphetamine at issue, we affirm on this point.

## 2. *Possession of drug paraphernalia*

Although he was charged with and convicted of possession of drug paraphernalia with the intent to use drug paraphernalia to introduce methamphetamine into the human body, Pamplin argues that there was insufficient evidence presented to the circuit court to establish that the confiscated syringe was used for that purpose.

Pamplin notes that (1) he was not tested for methamphetamine use; (2) evidence was presented that he had not used methamphetamine within the last six months; and (3) the syringe was found in his cargo shorts, not with the drugs in the backpack. Pamplin maintains he offered a reasonable explanation for how the syringe ended up in his pocket—that he found it on the side of the road and put it in his pocket to prevent it from getting into the hands of children.

Pamplin reiterates that the crime lab did not test the syringe to determine whether the residue inside it was methamphetamine, and Investigator Tumey confirmed that it was never established what substance was inside the syringe. Although the officers testified that the syringe could be used for the injection of methamphetamine, they also acknowledged that it could be used for legal purposes, such as injecting insulin.

Pamplin maintains there was no evidence introduced to prove that the syringe contained a controlled substance or that it would assist in its ingestion. He argues that the officers' assumption that the syringe was used for drug purposes even before any controlled substances were found is insufficient to support his conviction.

We disagree. As it is used in the statute, "drug paraphernalia" refers to "any equipment, product, and material of any kind that are used, intended for use, or designed for use in . . . injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this chapter." Ark. Code Ann. § 5-64-101(12)(A) (Supp. 2023). It "includes, but is not limited to . . . [a] hypodermic syringe, needle, or other object used, intended for use, or designed for use in parenterally injecting a controlled substance

17

into the human body." Ark. Code Ann. § 5-64-101(12)(B)(xii). Relevant factors to consider in determining whether an object is drug paraphernalia include:

> A statement by an owner or by anyone in control of the object concerning its use; . . . [a] prior conviction, if any, of an owner or of anyone in control of the object under any state or federal law relating to any controlled substance; . . . [t]he proximity of the object in time and space to a direct violation of this chapter; . . . [t]he proximity of the object to a controlled substance; . . . [and] [t]he existence of any residue of a controlled substance on the object.

Ark. Code Ann. § 5-64-101(12)(C)(i)–(v).

It is undisputed that Pamplin had four prior convictions for controlled-substance offenses. The used syringe, which contained a crystal-like substance consistent with methamphetamine, was on his person while he was in constructive possession of methamphetamine inside his backpack. And Pamplin's testimony established that he had a history of using syringes to inject methamphetamine. Given this evidence in the record before us, we hold that no speculation or conjecture was required for the jury to conclude that Pamplin possessed the syringe with the purpose of introducing methamphetamine into the human body. Pamplin's argument again improperly asks this court to consider the evidence in the light least favorable to the State, and again, it will not do so. *See Gladden*, *supra*. Because the State presented substantial evidence that the syringe constituted drug paraphernalia, we affirm on this point.

### B. Evidence of Pamplin's Previous Conviction

At the beginning of Pamplin's testimony during the guilt phase of the trial, he testified that he had issues with drugs in his past and is a convicted felon. On cross-examination, the

18

State attempted to introduce a certified copy of a 2021 revocation from a 2005 conviction for possession of methamphetamine with intent to deliver, possession of cocaine with intent to deliver, and simultaneous possession of drugs and a firearm, all Class Y felonies. The defense objected, stating that Pamplin had already admitted he is a convicted felon. The circuit court allowed the introduction of the certified-conviction exhibit over Pamplin's objection, stating that Pamplin had opened the door.

Pamplin argues that the introduction of his previous convictions was highly prejudicial and should not have been allowed. We do not reach his argument because he failed to preserve it for appellate review. To do so, there must have been an objection to the circuit court that is sufficient to have apprised the circuit court of the alleged error, and we will not address arguments raised for the first time on appeal. *E.g.*, *Gilliland v. State*, 2010 Ark. 135, at 10, 361 S.W.3d 279, 285. A party cannot change the grounds for an objection or motion on appeal; rather, it is bound by the scope and nature of the arguments made at trial. *E.g.*, *id.* Moreover, preservation of an argument requires a defendant to object at the first opportunity. *Tiarks v. State*, 2021 Ark. App. 325, at 9, 633 S.W.3d 788, 795.

Here, during the guilt phase of the trial, Pamplin testified that he had previously served time in prison on drug-related charges. On cross-examination, the State sought to introduce a certified copy of a 2021 revocation of four convictions from 2005 for controlled-substance offenses. Pamplin's counsel objected "because he's admitted that he's a convicted felon. I mean, he's not disputing—there might be some dispute as to the exact circumstances of when he got revoked . . . ." Pamplin's objection below was that the evidence was

cumulative, not that its admission violated Rules 404(b) and 403 of the Arkansas Rules of Evidence. Consequently, this argument is not preserved for appellate review.

Pamplin's argument likewise is unpreserved because he did not object to the introduction of the evidence of his 2005 convictions at the first opportunity. The first opportunity to object occurred when the State asked, "[I]sn't it true, Mr. Pamplin, that just on April 7, 2021, you pleaded guilty to one, two, three, four felonies?" Instead of objecting, Pamplin's counsel stated, "I would like the record to reflect that this was for an offense that was committed in 2005." The State continued, asking about the reason for the revocation, which received no objection from Pamplin's counsel. It was not until the State moved to introduce the certified copy of the revocation that an objection was raised. Accordingly, Pamplin's argument that the evidence of his prior convictions was improper and prejudicial is not preserved for review, and we need not address the merits of his argument.

C. Evidence of Pamplin's Pending Criminal Charges in the Sentencing Phase

Pamplin also testified during the sentencing phase of his trial. He testified that he had changed his life since serving time in prison and meeting his wife. Before cross-examination, the State approached the bench and stated that Pamplin had opened the door to questioning about his pending terroristic-threatening charge. Defense counsel objected, stating that Pamplin had not been found guilty of that charge, and he did not even know what the evidence was in the case. The circuit court overruled defense counsel's objection and allowed the questioning. The State asked whether Pamplin had a pending charge for

terroristic threatening from 2024 for which he would have an opportunity to go to trial and confirmed that the charge was a felony charge.

Pamplin argues that whether he had a pending terroristic-threatening charge offers no probative value in the sentencing phase of this case. He maintains that the information can only be viewed as the State's attempt to unduly suggest a longer sentence based on a charge for which Pamplin must be presumed innocent at the time of the sentencing phase of this case.

The circuit court has wide discretion in making evidentiary rulings, and we will not reverse a ruling on the admissibility of evidence absent an abuse of discretion. *Damon v. State*, 2025 Ark. App. 50, at 10–11. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.* We will not reverse such a ruling absent an abuse of that discretion, nor will we reverse absent a showing of prejudice because prejudice is not presumed. *Id.* Moreover, evidentiary errors in the sentencing phase of a trial are harmless when the defendant receives a sentence less than the maximum allowed. *See, e.g.*, *Wilcoxon v. State*, 2022 Ark. App. 458, at 15–16, 655 S.W.3d 686, 697.

Under Arkansas Rule of Evidence 403 (2024), a circuit court must weigh the probative value of the evidence against its prejudicial effect: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."

Here, Pamplin was charged with a Class C Felony and a Class D felony as a defendant with four or more prior felony convictions. As a habitual offender with four or more prior convictions, the statutory range for a Class C felony is three to thirty years' imprisonment and up to a $10,000 fine, pursuant to Arkansas Code Annotated section 5-4-501(b)(2)(D) (Supp. 2023), and the statutory range for a Class D felony is up to fifteen years' imprisonment and up to a $10,000 fine. *See* Ark. Code Ann. § 5-4-501(b)(2)(E). Pamplin received a sentence of twenty-seven years' imprisonment and a $5,000 fine for the Class C felony and three years' imprisonment and a $5,000 fine for the Class D felony. Because Pamplin was sentenced to less than the statutory maximum, he cannot show prejudice. Accordingly, to the extent any error was committed, such error was harmless, and this court will affirm.

We also hold that it was not erroneous for the circuit court to allow the State's questions about Pamplin's pending terroristic-threatening charge. Pursuant to Arkansas Code Annotated section 16-97-103(5) and (9) (Supp. 2023), evidence admissible at sentencing includes relevant character evidence and rebuttal evidence. Further, when a defendant testifies, he may open the door to evidence that would otherwise be inadmissible. *E.g.*, *Woolems v. State*, 2024 Ark. App. 380, at 5, 690 S.W.3d 893, 896. Once a defendant opens that door, the State may inquire into his knowledge of specific instances of conduct, and relevancy is the only limit on such inquiries. *E.g.*, *id.*

We find no merit in Pamplin's assertion that evidence of his pending terroristic-threatening charge was not relevant because he was not on trial for that charge. Our review

of the record confirms that the State asked the questions to rebut Pamplin's testimony about his own character. It included statements that he had "been slowly trying to change [his] whole life," from the time when he was regularly committing crimes. He testified that his wife was the reason that he had been able to turn his life around and that he was only being punished for an innocent mistake. He testified that he wanted to "throw [his] life away when [he] lost [his] son," but "now [he has] something to fight for and [he has] got [his] wife." Pamplin's statements opened the door for rebuttal by creating the impression that, although he may have had a propensity to commit crimes before, he had "something to fight for" and had since turned his life around. The likelihood that he will continue to commit crimes is a relevant consideration for the jury during sentencing.

Additionally, the probative value of the State's questioning was not substantially outweighed by the danger of unfair prejudice. On cross-examination, the State asked Pamplin, "[S]ince all these bad things have happened to you, you've really tried to do better; is that right?" The State also clarified that he had not been convicted of terroristic threatening by asking, "It's a pending charge for which you will have an opportunity to go to trial if you want, but it's a felony, isn't it?" There was no further mention of his pending charge. Although Pamplin may have been "prejudiced" in that his credibility was compromised by his assertion that he no longer commits crimes, he cannot claim that any such prejudice was unfair. The State did not suggest to the jurors that they should sentence Pamplin for a crime for which he had not been convicted; rather, it made clear that he would be tried separately on the pending terroristic-threatening charge. We hold that the State's questions about this

23

pending charge did not unfairly prejudice Pamplin. Accordingly, the circuit court's decision to allow the questioning was not an abuse of discretion, and we affirm.

We do, however, remand this case to correct the sentencing order. The State amended the original information on the possession-of-methamphetamine charge from a Class D felony to a Class C felony, and ultimately, Pamplin was convicted of and sentenced to twenty-seven years' imprisonment for possession of more than two but less than ten grams of methamphetamine in violation of Arkansas Code Annotated section 5-64-419(b)(1)(B)—the Class C felony. He was sentenced as a large habitual offender due to his prior convictions pursuant to Arkansas Code Annotated section 5-4-501(b)(2)(D), but the incorrect box was checked on the sentencing order, indicating that he was convicted under Arkansas Code Annotated section 5-64-419(b)(1)(A), which is the Class D felony for possession of less than two grams of methamphetamine. Accordingly, we remand to the circuit court with instructions to correct the sentencing order. *See Walls v. State*, 2023 Ark. App. 49, at 6, 659 S.W.3d 741, 744.

Affirmed; remanded to correct the sentencing order.

THYER and WOOD, JJ., agree.

*Vicki Lucas*, for appellant.

*Tim Griffin*, Att'y Gen., by: *James Hill*, Ass't Att'y Gen., for appellee.